[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants in this personal injury, negligence case move for summary judgment based on releases, waivers of liability, and covenants not to sue executed by J. Russell Caron. The plaintiff is Kristine M. Caron, individually and as conservatrix for the estate of J. Russell Caron. The defendants are Waterford Sports Center, Inc.; Tom Abele; T.H.E. Motorsports Enterprises, LLC, d/b/a Waterford Speedbowl; and Terry Eames.
Summary judgment shall enter forthwith if the pleadings and documentary evidence submitted by the parties demonstrate that there exists no genuine dispute as to material facts and that the movant is entitled to judgment as a matter of law. Practice Book § 17-49.
The pleadings and documents submitted for purposes of this motion show that there is no genuine controversy as to the following facts. On September 25, 1999, Waterford Sport's Center, Inc. owned and operated a motor vehicle racetrack located in Waterford. T.H.E. Motorsports Enterprises, LLC, known as Waterford Speedbowl, promoted, sponsored, and conducted go-kart races at the track. Terry Eames was the director and manager of Waterford Speedbowl. Tom Abele was a race-official for and participated in go-kart races held on that date at the track. The races were conducted in accordance with World Karting Association (Association) racing rules.
For many years J. Russell Caron was a member of the Association and had raced in over a hundred go-kart events. At approximately two o'clock in the afternoon, on September 25, 1999, Caron participated in a go-kart race at the track, lost control of his vehicle, crashed into a concrete wall, and sustained serious injuries including traumatic brain injury.
The odd-numbered counts of the complaint set forth various specifications of negligence pertaining to the four defendants. These specifications revolve around the purported lack of adequate barriers to CT Page 16078 protect racers from colliding directly into a concrete wall. The even-numbered counts contain parallel allegations for loss of consortium suffered by Kristine Caron because of the injuries to her husband, J. Russell Caron.
Before engaging in the race, J. Russell Caron signed a document entitled "Speedbowl Karting Association Membership Application/Agreement of Release 1 Day membership September 25, 1999 only." The body of the document indicates that, in exchange for membership in the Association, Caron agreed, inter alia, to
 "RELEASE, WAIVE DISCHARGE AND COVENANT NOT TO SUE THE SPEEDBOWL KARTING ASSOCIATION", or any of its members or officials "from or for any and all liability" for "bodily injury . . . which in any way grows out of or results from any SKA race . . . whether any such claim may be based upon alleged active or passive negligence caused by the releasee or otherwise or participate in duty the wrong, or upon any alleged breach of any statutory or obligation. . . ."
The agreement also provides that Caron assumes
 "FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise when in or upon restricted area and/or while competing . . . in the event."
The contract further states,
 "BY VOLUNTARILY AFFIXING MY SIGNATURE BELOW I WARRANT THAT I have read and understand all of the foregoing."
Just above the spaces for printed name and signature appears the following,
 "APPLICATION FOR MEMBERSHIP WILL NOT BE CONSIDERED UNLESS THIS AGREEMENT IS SIGNED BELOW."
It is uncontested that J. Russell Caron printed and signed his name in the appropriate spaces on this document.
In addition, on that date, before his race, Caron printed and signed another document entitled, in red ink, "RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT." This document provides CT Page 16079 that, in consideration of being allowed to enter any "RESTRICTED AREA (defined as any area requiring speed authorization, credentials, or permission to enter or any area to which admission by the general public is restricted or prohibited);" Caron, along with several other participants:
 "RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoters, participants, racing associations, sanctioning organizations or any subdivision thereof, track operators, track owners, officials, car owners, drivers, pit crews, rescue personnel, any persons in any RESTRICTED AREA, promoters, sponsors, advertisers, owners and lessess of premises used to conduct the EVENT(S) . . . FROM ALL LIABILITY TO THE UNDERSIGNED . . . FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO THE PERSON . . . ARISING OUT OF OR RELATED TO THE EVENT(S); WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE."
The Agreement further reiterates that Caron
 agrees that this Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement extends to all acts of negligence by the Releasees . . ."
Just above the spaces for printing one's name and for signing appears,
 "I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY . . . AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW."
Finally, on the line to which Caron affixed his signature is written, in red ink, "I HAVE READ THIS RELEASE."
The defendants argue that Caron's signing of these releases relinquished his, and derivatively his spouse's, rights to bring this lawsuit for injuries he sustained while racing his go-kart at Waterford Speedbowl even if these injuries were proximately caused by any negligence on the part of any of the defendants. CT Page 16080
 I
While the law disfavors contracts which relieve one from one's own negligence, such contractual provisions are valid if the exculpatory nature of the agreement is "clear and coherent." BD Associates,Inc. v. Russell, 73 Conn. App. 66, 72 (2002). This exacting standard requires that the terms of the contract be understandable as well as unambiguous. Id. To be understandable, the agreement must explicitly provide that negligence claims are being abandoned. Id.
Despite the plaintiff's claims to the contrary, there is no genuine factual dispute that those contracts satisfied this standard. The Association release expressly and boldly states that Caron was agreeing not to sue persons or entities such as these defendants and was waiving liability for their "active or passive negligence" arising "from any SKA race." The Waterford Speedbowl release and waiver is even more emphatic and precise in this regard. Provision 2 of that document absolves these defendants from "all liability" for bodily injury to Caron "whether caused by the negligence" of the defendants or others. Provision 6 reiterates that the release and waiver "extends to all acts of negligence" by these defendants. The last paragraph of the agreement is an acknowledgment by Caron that he read the release and understood that he was giving up "substantial rights by signing it." It is difficult to envision how any release, waiver, and covenant not to sue could be clearer or more definitive than this document.
The court concludes that the form and content of these agreements are such that they are valid and enforceable, as a matter of law, if J. Russell Caron assented to them.
 II
The court perceives the plaintiff's main contention to be that there exists a factual dispute as to whether Caron assented to the agreements which he signed. The plaintiff argues that the documentary evidence submitted contains some evidence indicating that Caron never read the documents before he signed them because of the circumstances at the race track on September 25, 1999. These circumstances were a rain delay, a long admission line, and the eagerness of Caron and his family to enter the racing area. The court concludes that these factors are immaterial in this particular case.
It is uncontroverted that the documents in question were on a table available to the prospective participants before the race. No race track CT Page 16081 personnel orally explained or discussed the documents with Caron. The plaintiff offers evidence that the race in which Caron was to engage in was delayed by rain and that this delay caused Caron, his wife, and their young children to be "eager to get to the stands" and "very impatient to get inside." There is no evidence that any of the defendants, their agents or employees, or any gatekeepers hurried or harried J. Russell Caron or his family or hampered his opportunity to read or review the agreements before he signed them.
"As a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party." 17A Am.Jur.2d. Contracts § 224. The failure to read a contract before signing it in no way diminishes its binding force. 17A Am.Jur.2d. Contracts § 225. When there is no fiduciary relationship or misleading conduct by the other contracting party, courts appear unanimous in holding that one who is given the opportunity to read a contract "cannot avoid the contract on the ground of mistake if he signs it without reading it." Id.
These basic principles of contract law have been adopted in Connecticut. No party is "allowed, in the absence of accident, fraud, mistake or unfair dealing to escape his contractual obligations by saying that he did not read what was expressly incorporated as specific provisions of the contract." EF Construction Co. v. RissilConstruction, 181 Conn. 317, 321 (1980). See also Batter BuildingMaterials Co. v. Kirschner, 142 Conn. 1, 7 (1954) and Ursini v.Goldman, 118 Conn. 554, 562 (1934).
Thus, Caron's assent to the terms of the releases and waivers in this case is presumed from the fact that he signed them even if he neglected to read them. The issue before the court is reduced then to the question of whether the existence of an exception to the conclusive presumption is genuinely presented by the documentation submitted. The plaintiff relies on the case of Diulio v. Goulet, 2 Conn. App. 701, 702 (1984) to show that such a material factual controversy arises in this litigation.
The Diulio case, supra, involved a plaintiff who attended an auto race to observe her boyfriend participate. She visited a pit area and was injured when pinned between a trailer and a race car. The defendants moved for and received summary judgment based on that spectator's signing of a release before entering the racing area. The Appellate Court reversed the trial court and found that a genuine factual dispute existed as to assent because that plaintiff had submitted a counteraffidavit in which she averred that she had failed to read the release before signing CT Page 16082 it because the gatekeeper "rushed" her and others in a long admission line through the gate and thereby prevented her from scrutinizing the document. Id., 703 and fn 2.
The Diulio case, supra, is distinguishable from the present action for several reasons. First, there is no evidence submitted in this matter that any race track employee rushed Caron to sign the documents. The counteraffidavits offered show that Caron may have felt anxious to seek admission to the racetrack after a rain delay because he and his family were "eager" or "impatient" to enter but not at the behest of the gatekeeper or any agent or employee of any defendant. Second, the evidence submitted undisputably shows that Caron had signed the identical release documents on August 15, 1999, about one month before his crash, when he participated in another race at the same track. Third, it is uncontroverted that Caron had raced in over a hundred previous Association events before each of which he had also executed the identical Association release. Finally, Caron executed three Association releases which had been sent to him at his residence during the years spanning his membership in the Association. He signed all of these identical releases, and there is no evidence that he was rushed to do so. In this case, unlike Diulio, supra, there is no evidence that the defendants or their employees deprived Caron of the opportunity to review the releases nor coaxed him to avoid reading them before he signed them.
As noted above, mistake cannot be founded on a party's own neglect to read the contract. The court concludes that, as a matter of law, Caron is presumed to have assented to these releases, waivers, and covenants not to sue.
 III
The plaintiff also argues that the agreements are void because they fail to comply with General Statutes § 42-151 which requires consumer contracts to be written plainly and without unnecessary legal jargon. The court need not decide whether the release at issue are consumer contracts which are embraced within § 42-151 because General Statutes §42-157 expressly states that even if consumer contracts violate §42-151, such agreements "shall remain enforceable." Consequently, the purported noncompliance with § 42-151 provides no basis for invalidating the releases.
 IV
At oral argument, the plaintiff for the first time raised the question of whether the races conducted on September 25, 1999, were unlawful CT Page 16083 because the operators failed to obtain a permit thus rendering the releases void. The plaintiff never briefed this claim nor provided any citation to statutes, regulations, or case law. No analysis of this issue was made, and the claim arose almost in passing at oral argument. The absence of legal analysis alone is sufficient to reject this claim.
Additionally, the plaintiff's contention on this point apparently is premised and contingent upon the existence of a factual dispute as to whether the races at Waterford Speedbowl on September 25, 1999, were open to the general public. An examination of the documents submitted discloses only evidence that the events on that day were closed to the public. Even Kristine Caron's counteraffidavit supports that conclusion. No contrary evidence was submitted. Therefore, there is no genuine factual dispute relevant to this claim.
 V
Because the court has concluded that all defendants are entitled to a summary judgment on the basis of the releases, waivers, and covenants not to sue executed by Caron, the court need not address an alternative ground for granting the motion as to Abele based on the federal Volunteer Protection Act.
Summary judgment enters in favor of all defendants.
___________________, J. Sferrazza CT Page 16084